**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**UNITED STATES OF AMERICA,**

v.  Case No. 1:05M25

**LAWRENCE RAY BENNETT,**

**Defendant.**

## ORDER/OPINION

On May 24, 2005, came the United States by Shawn Angus Morgan, its Assistant United States Attorney, and Lawrence Ray Bennett, in person and by his counsel, Brian J. Kornbrath, on the criminal complaint filed against him on May 20, 2005, and for a preliminary hearing and hearing on the written motion of the United States for detention of Defendant pending further proceedings.

Prior to the taking of evidence, counsel for Defendant waived the preliminary hearing. From the colloquy between the Court and the defendant, the Court concludes Defendant's decision to waive the preliminary hearing was knowingly and voluntarily made.

The Court therefore accepts Defendant's waiver of preliminary hearing.

The Court therefore finds there is probable cause to believe that on or about May 17, 2005, at or near Morgantown, in Monongalia County, West Virginia, within the Northern District of West Virginia, the crime of knowingly and intentionally using a communication facility, the United States Postal Service, in committing, causing, and facilitating the commission of felonies under Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(D) and 846, that is, possession with the intent to distribute marijuana, and a conspiracy to possess with intent to distribute and to distribute marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Sections 843(b) was committed, and further finds there is probable cause to believe Lawrence Ray Bennett committed

that crime.

In support of its Motion to Detain, the Government called Special Agent Anthony P. Branch with the United States Postal Service, who testified:

1) He was involved in the investigation of the mailing of packages to 212 Dewey Street, Morgantown, West Virginia.

2) On May 18, 2005, Postal inspectors in the Northern District of West Virginia received information that a suspicious package had arrived in Pittsburgh, Pennsylvania.

3) A certified narcotic detecting canine alerted positively to the package.

4) The suspect package had a return address of Compton, California.

5) The package was hand transferred to Postal Inspectors in the Northern District of West Virginia.

6) The package was addressed to Larry Bennett, 212 Dewey St., Morgantown, WV.

7) The package weighed 30 pounds, 2 ounces.

8) Special Agent Branch obtained a Federal search warrant for the package

9) Upon execution of the search warrant, Postal Inspectors found eight bundles of vacuum sealed bags of a green leafy substance, weighing a total of 28.38 pounds.

10) The contents of the package field tested positive for marijuana.

11) Postal Inspectors researched historic Express Mail labels and found an additional three Express Mail Labels mailed from the same address in California, weighing 4 pounds, 15 ounces, 15 pounds, 3 ounces, and 21 pounds, 10 ounces respectively.

12) All three packages were addressed to Larry Bennett.

13) The first two packages were signed for by a "Larry Bennett," while the third was signed for by a "Jamal Hill."

14) On May 19, 2005, Postal Inspectors, along with the Mon Valley Drug Task force, performed a controlled delivery of the suspect package to 212 Dewey St., Morgantown, West Virginia.

15) An individual signed the name "Larry Bennett" on the package, but indicated he was not actually Larry Bennett.

16) The individual was subsequently interviewed by officers, and indicated that was the first package he had signed for for Larry Bennett. He also advised that he had informed Larry Bennett of the package. The individual cooperated with the officers by waiting for Larry Bennett outside his residence.

17) On May 19, 2005, a search was conducted on the residence of 212 Dewey St., pursuant to a Federal search warrant.

18) Found in the residence was the Express Mail package.

19) Upon Larry Bennett's return to the residence, officers interviewed him.

20) Bennett admitted he had received three or four packages at 212 Dewey Street.

21) Bennett would not state who sent him the packages.

22) Bennett admitted he signed one package as "Jamal Hill."

23) Upon searching Bennett's person, officers found approximately $200.00 and a Nextel cellular phone.

24) Upon reviewing photographs stored on the cell phone, officers found one photograph dated April 30, 2005, that depicted a package similar to the one delivered on May 19, 2005. The photograph showed a package that had been opened in the living room of 212 Dewey Street, revealing numerous bundles of marijuana. Other photographs showed individuals holding

bundles and wads of cash in large denominations.

25) When asked about the photographs, Bennett laughed, and stated he did not know why he took them.

26) When asked why the packages were delivered to that address in Morgantown, Bennett stated that it was a place he could trust.

27) Bennett would not state what he did with or intended to do with the marijuana.

28) The four packages delivered to 212 Dewey Street had a combined weight under 70 pounds.

29) There is no evidence at this time of any additional packages or marijuana.

Defendant called Adult Pretrial Services Officer John Burlas who testified:

1) He had necessarily prepared the Pretrial Services Report in this matter before he had had the opportunity to speak with Bennett's parents.

2) He was able to speak with Bennett's mother, Eva Bennett by telephone this date.

3) Mrs. Bennett confirmed that Lawrence Bennett was a lifelong resident of Compton, California.

4) Mrs. Bennett indicated that she considered Lawrence Bennett Jr., to be only visiting West Virginia, and still considered him a resident of Compton.

5) Mrs. Bennett works for Kaiser-Permanente.

6) Bennett's father, Lawrence Bennett, Sr., works in the trucking industry, hauling for Wal Mart, and is also trying to start his own trucking company.

7) Mrs. Bennett indicated she and her husband were willing to have Bennett live with them at their residence.

8) Mrs. Bennett indicated she and her husband were willing to act as custodians for their son.

9) Mrs. Bennett indicated she was willing to remove her answering machine from her phone line and pay for electronic monitoring for her son.

10) Pretrial Services Officer Burlas had not yet had the opportunity to speak with Pretrial Services in California, but assumed they had the same capability for monitoring Bennett as the office in Clarksburg, West Virginia.

Defendant then argued, through counsel, that Defendant's only eligibility for detention was based on risk of flight, and that there were conditions of release that could reasonably address this risk.

In consideration of all the above, the undersigned finds as follows:

1) Defendant's eligibility for detention is based solely on risk of flight.

2) There are serious charges pending against Defendant.

3) Notwithstanding the serious nature of the charges, there are conditions of release that could reasonably address any risk of flight posed by Defendant.

4) Defendant has a stable home environment and is a lifelong resident of Compton, CA.

5) Defendant's parents are willing to act as custodians and are willing to have Defendant reside with them.

6) Defendant's father is willing to sign Defendant's bond form as custodian.

7) Defendant's parents are willing and able to pay for and allow electronic monitoring.

From the testimony adduced before the Court and the pretrial services report dated May 24, 2005, a copy of which is hereby **ORDERED** filed and made a part of the evidentiary portion of the record in this case, the Court finds the United States failed to prove by clear and convincing

evidence that Defendant is a flight risk such that no order setting conditions of release can be crafted which would justify Defendant's release from pre-trial detention and did not allege that Defendant is a danger to the community in its motion for detention and did not prove by clear and convincing evidence that Defendant is a danger to the community or to any person such that no order setting conditions of release can be crafted which would justify Defendant's release from pre-trial detention

Accordingly, the motion of the United States to detain defendant, Lawrence Ray Bennett, pending further proceedings in this matter is **DENIED** and Lawrence Ray Bennett is **ORDERED** released in accord with this Court's Order Setting Conditions of Release bearing even date herewith.

The Clerk shall direct copies of this order to counsel for the United States, to counsel for the defendant, to the United States Marshal, and to the United States Probation Officer.

DATED: May 25, 2005.

/s *John S. Kaull*

JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE